UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STACEY VANWINKLE, individually and on behalf of MV and AV, minor children, and DEREK VANWINKLE, individually and on behalf of MV and AV, minor children,<br>    *Plaintiffs*,<br><br>    *vs.*<br><br>SEANNA NICHOLS, MONIQUE MILLER, PEGGY SURBEY, MARI BRYAN MCGENEY, AND CORTNEY DEMETRIS, M.D.,<br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:15-cv-01082-JMS-MJD |

## <u>ORDER</u>

Presently pending before the Court are Defendant Cortney Demetris, M.D.'s Motion to Dismiss Plaintiffs' Amended Complaint, [Filing No. 43], and Dr. Demetris' Motion to Strike Exhibits Attached to Plaintiffs' Response to Defendant Cortney Demetris, M.D.'s Motion to Dismiss Plaintiffs' Amended Complaint, [Filing No. 54].

## I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

In reviewing the sufficiency of the complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The factual allegations in Plaintiffs' Amended Complaint, which the Court must accept as true, are as follows:

**A. AV's Medical Issues**

Plaintiffs Stacey and Derek VanWinkle[1] are married and have two daughters: MV, who is sixteen years old, and AV, who is fourteen years old. [Filing No. 37 at 1-2.] Stacey is a registered nurse, and Derek is a stay-at-home father. [Filing No. 37 at 1.] Shortly after AV was born, she exhibited hypotonia, or floppy baby syndrome, and had difficulty keeping down food and baby formula. [Filing No. 37 at 6.] Dr. Susan Maisel, a gastroenterologist, began treating AV for her vomiting issues, and treated AV for over ten years. [Filing No. 37 at 7.] AV's vomiting often

---

[1] For clarity, the Court will refer to Ms. VanWinkle as "Stacey" and Mr. VanWinkle as "Derek."

interfered with her ability to attend school, and her excessive vomiting and nausea have been wit-

nessed by her parents, MV, her grandparents, her teachers, school employees, and her home

healthcare nurses.  [Filing No. 37 at 7.]

AV has also had myopathy, or muscle weakness, throughout her life, which makes it diffi-

cult for AV to accomplish certain daily tasks and causes fatigue and low energy levels.  [Filing

No. 37 at 7.]  She has been diagnosed with a "neuromuscular disease," and possibly a mitochon-

drial disorder.  [Filing No. 37 at 7.]

**B.  AV's June 2013 Hospital Admission**

In May 2013, Dr. Maisel contacted Dr. Demetris, who was a doctor at Peyton Manning

Children's Hospital at St. Vincent in Indianapolis, to voice her concern that AV's gastrointestinal

symptoms were being exaggerated by Stacey.  [Filing No. 37 at 3; Filing No. 37 at 8.]  AV was

admitted to St. Vincent from June 10 through June 12, 2013 for observation related to her gastro-

intestinal symptoms and, during that stay, Dr. Demetris placed AV under covert video surveillance

and concluded that AV's symptoms were not consistent with the gastrointestinal complaints and

symptoms Stacey had reported.  [Filing No. 37 at 9.]  Dr. Demetris reported her observations

regarding Stacey's reports and AV's symptoms to the Marion County Office of the Indiana De-

partment of Child Services ("DCS") on June 12, 2013.  [Filing No. 37 at 9.]  Before submitting

her observations to DCS, Dr. Demetris did not review the medical records from AV's treating

physicians, interview Stacey or Derek, or speak with anyone who had observed AV outside of a

clinical setting.  [Filing No. 37 at 11.]  Dr. Demetris did not mention Derek in her report.  [Filing

No. 37 at 9.]

### C.  DCS Removes AV and MV From the VanWinkle's Home

On June 17, 2013, Dr. Demetris, various DCS personnel, and an Indianapolis Metropolitan Police Department representative attended a "care conference."  [Filing No. 37 at 4.]  After discussing the situation, DCS officials added Derek to the report and, without obtaining a court order, DCS officials removed AV and MV from the VanWinkle's home on June 17, 2013.  [Filing No. 37 at 9.]  DCS placed MV with a foster family, and took AV to St. Vincent.  [Filing No. 37 at 9.] Prior to the removal of AV and MV, neither Stacey nor Derek had ever been questioned or confronted regarding over-reporting of AV's symptoms.  [Filing No. 37 at 10.]

### D.  The Administrative Process

On July 10, 2013, AV and MV were ordered returned to the physical custody of Stacey and Derek.  [Filing No. 37 at 4.]  A Child Care Worker Assessment Review ("CCWAR") was initiated against Stacey on August 12, 2013, because she worked in the child care field.  [Filing No. 37 at 5.]  During the CCWAR, DCS substantiated the allegations of neglect against both Stacey and Derek.  [Filing No. 37 at 5.]  On September 4, 2013, Stacey and Derek sought administrative review of DCS's substantiations, but their appeal was stayed pending resolution of a Child in Need of Services ("CHINS") proceeding that had been initiated when DCS removed AV and MV from the VanWinkle's home.  [Filing No. 37 at 5.]

On October 8, 2013, DCS voluntarily dismissed the CHINS proceeding and reactivated the VanWinkle's administrative appeal of the neglect substantiation on October 21, 2013.  [Filing No. 37 at 5.]  Due to a procedural defect in the initial CCWAR, a second CCWAR took place on November 21, 2013, and DCS re-substantiated the neglect determination against Stacey with respect to both MV and AV.  [Filing No. 37 at 5.]  Stacey and Derek sought administrative review

of the substantiations on December 5, 2013.  [Filing No. 37 at 5.]  After a hearing before an Administrative Law Judge ("ALJ"), the ALJ held on January 31, 2014 that the allegations of neglect against Stacey with respect to MV were unsubstantiated, but that the allegations of neglect with respect to AV were substantiated.  [Filing No. 37 at 6.]  The ALJ issued a nearly identical decision with respect to Derek on February 7, 2014, finding that allegations of neglect were substantiated as to AV, but not as to MV.  [Filing No. 37 at 6.]

On March 4, 2014, Stacey and Derek sought judicial review of the ALJ's decisions, and the Marion Superior Court reversed both of the ALJ's decisions, finding that the ALJ orders constituted an abuse of discretion, and ordering DCS to "provide notice to any entities to which DCS previously gave notice of the substantiation of neglect as to Stacey and Derek, that the determination of child neglect as to both Stacey and Derek ha[d] been unsubstantiated."  [Filing No. 37 at 6.]

### E.  The Lawsuit

On June 8, 2015, Stacey and Derek filed a lawsuit in Marion Superior Court against Dr. Demetris and several DCS officials (the "DCS Defendants"), asserting a claim for violations of 42 U.S.C. § 1983 against all Defendants, and a claim for medical negligence against Dr. Demetris. [Filing No. 3-1 at 44-48.]  The DCS Defendants removed the case to this Court on July 10, 2015, [Filing No. 3], and Dr. Demetris moved to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), [Filing No. 22].  Stacey and Derek sought leave to amend their Complaint in lieu of responding to Dr. Demetris' Motion to Dismiss, in order to: "(1) eliminate the medical negligence claim [against Dr. Demetris] (without prejudice to Plaintiffs' right to re-assert the claim after submission to a medical review panel under the Indiana Medical Malpractice Act) and (2) to clarify that Plaintiffs assert a Section 1983 conspiracy claim against the defendants."  [Filing No.

29 at 2-3.]   The Court granted Stacey and Derek's Motion to Amend, [Filing No. 36], and they filed the operative Amended Complaint on October 7, 2015, [Filing No. 37].

In the Amended Complaint, Stacey and Derek, individually and on behalf of MV and AV, assert a claim for violations of 42 U.S.C. § 1983 against all Defendants.  [Filing No. 37 at 12-14.] Additionally, Stacey and Derek allege that Dr. Demetris: (1) placed AV under covert video surveillance; (2) reported her concerns regarding AV to DCS; (3) did so without reviewing AV's medical records, interviewing Stacey or Derek, or speaking with anyone who had observed AV outside a clinical setting; and (4) participated in a "care conference" immediately preceding AV's removal from the VanWinkle home.  [Filing No. 37 at 4-11.]  Stacey and Derek refer to all of the Defendants, including Dr. Demetris, as "the DCS Team," and assert numerous allegations collectively against the DCS Team, including that:

- The DCS Team, both individually and through participation in a conspiracy, violated the VanWinkle's civil rights by "accusing Stacey and Derek and detaining AV and MV, [and acting] without rational basis and recklessly and/or knowingly violated clearly established laws and legal standards, including the Fourth Amendment right to freedom from unreasonable search and seizure and the Fourteenth Amendment right to substantive and procedural due process";

- The DCS Team "further violated provisions of the federal statutes that are unambiguous, intended to protect families and children, and mandatory, as well as the state laws and manuals that implement the federal requirements and provide a presumptively constitutional plan that balances the need to protect abused or neglected children against the constitutional rights of families….In this case, the defendants ignored and rejected virtually all aspects of the regulatory scheme, resulting in illegal detention, harassment, retaliation, and a private right of action under 42 U.S.C. § 1983";

- The DCS Team "seized AV and MV in violation of the Fourth Amendment and conspired to violate their Fourth Amendment rights.  The DCS Team acted unreasonably in seizing AV and MV without probable cause or a court order.  The DCS Team also had less intrusive means of interference (other than seizure) available to them, but chose to seize AV and MV even though their physical or mental condition would not be seriously impaired or endangered if they were not immediately taken into custody";

- 6 -

- The DCS Team "violated the VanWinkle family's substantive due process rights and conspired to violate those rights. Although there was no imminent 'unnecessary' medical treatment for AV, the DCS defendants unnecessarily intruded upon the VanWinkle family's right to familial relations"; and

- The DCS Team "violated the VanWinkle family's procedural due process rights and conspired to violate those rights. It was unreasonable to remove AV and MV from their home because neither was in immediate physical danger, and there was no pre-removal hearing or court order."

[Filing No. 37 at 13-14 (emphasis omitted).]

Dr. Demetris filed the pending Motion to Dismiss on October 21, 2015, [Filing No. 43], and it is now ripe for decision.

### III.
### DISCUSSION

Dr. Demetris asserts three principle arguments in support of her Motion to Dismiss: (1) that the Court does not have subject matter jurisdiction over Plaintiffs' lawsuit because their § 1983 claim is "simply a rebranded recitation of Plaintiffs' medical negligence claim against Dr. Demetris"; (2) that Plaintiffs have failed to state a viable § 1983 claim for numerous reasons; and (3) that Plaintiffs' § 1983 claim against Dr. Demetris is barred by state and federal immunity statutes and common law principles of immunity, and that allowing Plaintiffs to circumvent those statutes and principles would "have a chilling effect on professionals that are obligated to report suspected child abuse." [Filing No. 44.] The Court will address each argument in turn, but at the outset addresses the contours of Plaintiffs' claims against Dr. Demetris and Dr. Demetris' Motion to Strike, since resolution of those issues will frame the Court's discussion of the Motion to Dismiss.

### A.  Contours of Plaintiffs' Claims

Plaintiffs allege that Defendants "violated the family's civil rights individually and through their participation in a conspiracy to achieve this end, with all actions taken under color of state

law." [Filing No. 37 at 13.]  While this allegation may indicate that Plaintiffs are asserting both an individual § 1983 claim and a § 1983 conspiracy claim against each Defendant, including Dr. Demetris, this does not appear to be so for several reasons.  First, Dr. Demetris moved to dismiss Plaintiffs' original Complaint on August 28, 2015, arguing among other things that the Complaint did not sufficiently allege that she was a state actor or acted under color of state law.  [Filing No. 23 at 6-7.]  Though Plaintiffs amended their original Complaint, making Dr. Demetris' first motion to dismiss moot, the Amended Complaint contained the same state actor allegations regarding Dr. Demetris as the original complaint.  [*Cf.* Filing No. 3-1 at 35-36 and Filing No. 37 at 3.]  And though Dr. Demetris specifically incorporated the arguments from her first motion to dismiss in the pending motion, [Filing No. 44 at 5], Plaintiffs did not respond to any of her arguments regarding their failure to adequately allege that she was a state actor or acted under color of state law.

Additionally, Plaintiffs refer only to a § 1983 conspiracy claim in their response to the pending Motion to Dismiss, characterizing their § 1983 claim against Dr. Demetris as a "claim," rather than "claims," and discussing only a conspiracy under § 1983, rather than an individual violation.  [*See, e.g.*, Filing No. 48 at 2 (Plaintiffs stating that "[a]s Dr. Demetris admits, the claim asserted in the amended complaint is a Section 1983 claim"); Filing No. 48 at 7 (Plaintiffs arguing that they "have sufficiently alleged facts supporting a reasonable inference that a conspiracy existed between Dr. Demetris and the state actors to deprive Plaintiffs of their constitutional rights, and that the defendants jointly acted in furtherance of this conspiracy by reporting false neglect charges to DCS and setting into motion the removal of the children").]

Because Plaintiffs do not address Dr. Demetris' arguments regarding whether they have adequately alleged that she was a state actor or acted under color of state law – a necessary element of a direct § 1983 claim against her – and since Plaintiffs themselves characterize their allegations

against Dr. Demetris as involving one claim for § 1983 conspiracy, the Court will construe Plaintiffs' allegations as only alleging a § 1983 conspiracy claim against a non-state actor.  *See Greenlaw v. United States*, 554 U.S. 237, 243-44, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotation omitted).  It is within those contours that the Court undertakes its analysis.

### B.  Motion to Strike

In her Motion to Strike, Dr. Demetris argues that the exhibits Plaintiffs attached to their response in opposition to the Motion to Dismiss should be stricken because the Motion to Dismiss is based on Fed. R. Civ. P. 12(b)(6) so no outside evidence is appropriate or necessary.  [Filing No. 54 at 2.]  The exhibits include: (1) the Marion Superior Court's Findings of Fact and Conclusions of Law from Plaintiffs' appeal of the ALJ's January 31, 2014 and February 7, 2014 decisions, [Filing No. 48-1]; (2) Dr. Demetris' Pediatric Hospitalist Progress Note from June 12, 2013, [Filing No. 48-2]; (3) an Assessment of Alleged Child Abuse or Neglect Form, completed by a DCS representative, [Filing No. 48-3]; and (4) excerpts from the deposition of Dr. Demetris that was taken in connection with the Marion County Superior Court lawsuit, [Filing No. 48-4].  Dr. Demetris also argues that the exhibits are improper evidence – specifically, that the Findings of Fact and Conclusions of Law from the Marion Superior Court are not "applicable, admissible, or binding with respect to her conduct as alleged in Plaintiffs' Amended Complaint"; that the Pediatric Hospitalist Progress Note is not authenticated or certified; that the Assessment of Alleged Child Abuse or Neglect Form is unsworn and is neither authenticated nor certified; and that the excerpts

from Dr. Demetris' deposition do not fall within the parameters of Fed. R. Civ. P. 32(A)(8), which proscribes certain situations where a deposition taken in an earlier action is admissible in a later action.  [Filing No. 54 at 2-3.]

In response, Plaintiffs argue that they are permitted to submit evidence in opposition to a motion to dismiss for lack of subject matter jurisdiction, and that "Dr. Demetris's 'subject matter jurisdiction' argument is bootstrapped from her argument that the complaint fails to state a claim." [Filing No. 55 at 2.]  Plaintiffs also contend that they can submit evidence in response to a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), and that such evidence is not required to be admissible.  [Filing No. 55 at 3-4.]

Dr. Demetris' Motion to Strike has merit for two reasons.  First, Plaintiffs argue that "[o]n a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is well settled that the Court may appropriately consider evidence beyond the complaint."  [Filing No. 55 at 2.] But Plaintiffs rely upon the exhibits they attach to their response brief to support their argument that they have adequately alleged a § 1983 conspiracy claim under Fed. R. Civ. P. 12(b)(6).  [*See, e.g.*, Filing No. 48 at 2-6 (discussing DCS' and Dr. Demetris' actions as reflected in the exhibits, and then arguing that "[t]he allegations in the VanWinkle's complaint plausibly suggest that they are entitled to relief against Dr. Demetris under Section 1983, and therefore their complaint has met the pleading standard under *Twombly*").]  Although Dr. Demetris discussed her subject-matter jurisdiction and adequacy of pleading arguments in the same section of her brief in support of her Motion to Dismiss, the Court – as discussed below – views those arguments as separate and distinct.  The exhibits upon which Plaintiffs rely do not relate to Dr. Demetris' subject-matter jurisdiction argument.

Second, Plaintiffs rely upon a case from the Seventh Circuit Court of Appeals for the proposition that the party opposing a motion to dismiss may submit extrinsic evidence without converting the motion into one for summary judgment, that it is "recommended" that the plaintiff do so, and that the evidence need not even be admissible.  [*See* Filing No. 55 at 3-4.]  As a general rule, it is not appropriate to look outside the pleadings in considering a motion to dismiss.  *See Rosenblum v. Travelbuys.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).  While a court may consider documents referenced in or integral to the complaint, the documents Plaintiffs submit with their response brief do not fall within those parameters so are not the type routinely considered on a 12(b)(6) motion to dismiss.  *See* Fed. R. Civ. P. 12(d) (court may exclude matters falling outside the pleadings when considering a 12(b)(6) motion); *Swan v. Alcoa Power Generating, Inc.*, 2011 WL 900948, *1 (S.D. Ind. 2011).

In the case Plaintiffs rely upon, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012), the Seventh Circuit Court of Appeals remarked in a footnote that:

> A party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings….In the district court, too, a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove….[A] plaintiff who is opposing a Rule 12(b)(6)…motion and who can provide such illustration may find it prudent to do so.  (It may also be prudent to explain to the district court that the materials are being submitted for illustrative purposes and should not be used to convert the motion into a Rule 56 motion for summary judgment).

Plaintiffs here do not specify that the extraneous material they submit with their response brief is "for illustrative purposes," but instead explicitly state that the Court can consider the material because it relates to whether the Court has subject-matter jurisdiction.  [Filing No. 48 at 3 (arguing that "[o]n a motion to dismiss for lack of subject matter jurisdiction, the Court may appropriately consider evidence beyond the complaint").]  As discussed above, however, the extraneous material does not relate to the issue of subject matter jurisdiction, but rather to whether

- 11 -

Plaintiffs have adequately alleged a § 1983 conspiracy claim against Dr. Demetris.  The Court does not read *Geinosky* as suggesting that it can consider extraneous material to find that a plaintiff has alleged a certain element of a claim, or the requisite level of specificity for a claim, when those allegations do not appear in the complaint.  Rather, extraneous material can be considered only to expand on allegations otherwise present in the complaint.  Accordingly, the Court **GRANTS** Dr. Demetris' Motion to Strike and will not consider the materials Plaintiffs submit with their response brief in determining whether Plaintiffs have adequately alleged a § 1983 conspiracy claim against Dr. Demetris.[2]

### C.  Motion to Dismiss

#### 1.  *Subject Matter Jurisdiction*

Dr. Demetris first argues that Plaintiffs' § 1983 conspiracy claim is "a rebranded version of their State Law Claim," and that the rebranding "is being used to circumvent State Law Immunity provisions afforded to mandated reporters of suspected child abuse (such as Dr. Demetris)." [Filing No. 44 at 5.]  Accordingly, Dr. Demetris argues, the Court lacks subject matter jurisdiction because the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." [Filing No. 44 at 5-6 (quotation and citation omitted).]

---

[2] The Court also notes that Plaintiffs filed an Amended Complaint in lieu of responding to Dr. Demetris' first motion to dismiss, which raised issues regarding the adequacy of Plaintiffs' § 1983 allegations against her.  [*See* Filing No. 23.]  Plaintiffs had every opportunity to add more detail regarding those allegations – including details from the extraneous material they now seek to rely upon – when they filed their Amended Complaint.  The Court will not allow them to amend their substantive allegations by attaching exhibits to a brief in response to a motion to dismiss.  This is inefficient, improper, and frustrates the purpose of Fed. R. Civ. P. 15.  *See* Fed. R. Civ. P. 15(a)(1)(B) and Advisory Committee Notes to 2009 Amendment ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim").

In response, Plaintiffs argue that they assert a § 1983 conspiracy claim, so the Court has federal question jurisdiction. [Filing No. 48 at 2.] They also note that Dr. Demetris consented to removal of the case to this Court. [Filing No. 48 at 2.]

Dr. Demetris does not address this argument head-on in her reply, focusing instead on her assertion that Plaintiffs fail to adequately allege a § 1983 conspiracy claim. [Filing No. 53 at 1-4.]

Plaintiffs clearly base their claim against Defendants on § 1983, and allege that Defendants "violated the [VanWinkle] family's civil rights individually and through their participation in a conspiracy to achieve this end, with all actions taken under color of state law." [Filing No. 37 at 13.] Their § 1983 conspiracy claim against Dr. Demetris is separate and apart from any negligence claim they may have against her, with different elements and proof requirements.[3] The Court has subject matter jurisdiction here because Plaintiffs assert a federal § 1983 conspiracy claim, and the Court rejects Dr. Demetris' argument otherwise. Whether Plaintiffs have adequately alleged that claim, however, is another issue, and is discussed below.

### 2. Immunity

The Court will address Dr. Demetris' immunity arguments first, to determine whether Dr. Demetris is immune from any of the actions that form the basis for Plaintiffs' § 1983 conspiracy

---

[3] Dr. Demetris cites *Ridlen v. Four County Counseling Center*, 809 F.Supp. 1343 (N.D. Ind. 1992), for the proposition that "the court found subject matter jurisdiction was lacking because the claim was fundamentally one of medical malpractice." [Filing No. 44 at 6.] In *Ridlen*, the court found that the § 1983 claim failed because the plaintiff had not adequately alleged state action, remarking that "[f]undamentally, this case is a claim for medical malpractice which should be decided on the basis of well developed substantive statutory and case law in the State of Indiana." *Id.* at 1358. But the *Ridlen* court's conclusion was based on the fact that there was no state action, and that the court declined to exercise pendent jurisdiction over the plaintiffs' state law claim under the Indiana Medical Malpractice Act. *Id.* at 1359. It did not find that the § 1983 claim was merely a recasting of the medical malpractice claim, done in an effort to confer federal jurisdiction.

claim.  Dr. Demetris argues that Plaintiffs' claim is barred by state immunity statutes – specifically, I.C. § 31-33-6-1 through § 31-33-6-3 – and that these statutes apply even though they are typically not applicable to § 1983 claims because they are "not inconsistent with the intent and purpose of the federal law."  [Filing No. 44 at 9-10.]  Dr. Demetris also argues that she is immune under federal statutes, pointing to the Victims of Child Abuse Act, 42 U.S.C. § 13001, *et seq.* and 42 U.S.C. § 13031(f) ("VCAA") and the Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101, *et seq.* ("CAPTA").  [Filing No. 44 at 10-11.]  Finally, Dr. Demetris argues that it would be against public policy to "[a]llow[] Plaintiffs to circumvent Federal and State immunity statutes," and that this "would have a chilling effect on professionals that are obligated to report suspected child abuse."  [Filing No. 44 at 12-13.]

        In response, Plaintiffs argue that state immunity statutes do not bar their claims against Dr. Demetris because wrongful conduct under § 1983 cannot be immunized by state statute and that, in any event, Dr. Demetris' conduct "extends far beyond merely reporting child abuse or neglect." [Filing No. 48 at 9-10.]  Plaintiffs also argue that the immunity provision in the VCAA that Dr. Demetris points to only applies to activity taking place on federal land or in a federally operated facility, so does not apply here.  [Filing No. 48 at 9.]  As to Dr. Demetris' public policy argument, Plaintiffs contend that not extending immunity to § 1983 claims "only has a potential chilling effect with respect to those professionals who are state actors or who conspire with state actors to violate the constitutional rights of the people involved," and that not holding those individuals accountable would make "the guarantee of constitutional rights…illusory."  [Filing No. 48 at 11.]

        On reply, Dr. Demetris does not address Plaintiffs' argument that the VCAA only applies to activity taking place on federal land or in a federally operated facility.  She argues that she is entitled to judicial immunity for her reporting of the suspected abuse, for any actions taken by her

after AV was in DCS custody, and for her testimony during the administrative process.  [Filing No. 53 at 5-8.]  Dr. Demetris also argues that she is entitled to witness immunity for her testimony during the administrative process.  [Filing No. 53 at 8.]  Dr. Demetris contends that Plaintiffs did not adequately respond to her arguments regarding why state and federal immunity statutes bar their claim, distinguishing cases relied upon by Plaintiffs and arguing that Plaintiffs' interpretation of immunity as only relating to the actual reporting of abuse is too narrow.  [Filing No. 53 at 12-18.]

i.   <u>State Statutory Immunity</u>

Dr. Demetris relies upon I.C. § 31-33-6-1 through § 31-33-6-3 to argue that she is immune from § 1983 liability for her actions related to AV.  § 31-33-6-1 provides that:

> Except as provided in section 2 of this chapter, a person, other than a person accused of child abuse or neglect, who:
>
> > (1) makes or causes to be made a report of a child who may be a victim of child abuse or neglect;
> >
> > (2) is a health care provider and detains a child for purposes of causing photographs, x-rays, or a physical medical examination to be made under IC 31-33-10;
> >
> > (3) makes any other report of a child who may be a victim of child abuse and neglect; or
> >
> > (4) participates in any judicial proceeding or other proceeding:
> >
> > > (A) resulting from a report that a child may be a victim of child abuse or neglect; or
> > >
> > > (B) relating to the subject matter of the report;
>
> is immune from any civil or criminal liability that might otherwise be imposed because of such actions.

Section 31-33-6-2 exempts individuals who act maliciously or in bad faith from immunity, but § 31-33-6-3 provides that "[a] person making a report that a child may be a victim of child abuse or neglect or assisting in any requirement of this article is presumed to have acted in good faith."

The Seventh Circuit Court of Appeals has consistently found in other contexts that state immunity statutes cannot operate to shield individuals from liability under § 1983.  *See, e.g.*, *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) ("A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action"); *Hampton v. City of Chicago, Cook County, Ill.*, 484 F.2d 602, 607 (7th Cir. 1973) (§ 1983 claims "cannot be immunized by state law[;] A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced").

Dr. Demetris argues that the Court should apply Indiana state law immunity because it would be consistent with CAPTA, which she argues shows that "Congress clearly intended to authorize immunity for reporters in order to encourage more extensive reporting."  [Filing No. 44 at 11.]  However, Dr. Demetris has not cited any legal authority standing for the proposition that a state statute can provide immunity from a federal claim in any context, let alone in this context. The Court will not apply Indiana's immunity statute in this context to a § 1983 conspiracy claim. *See Finnegan v. Myers*, 2015 WL 5252400, *11 (N.D. Ind. 2015) ("To the extent that Dr. Laskey relies on Indiana law to extend federal absolute immunity provisions to good faith reporters of child abuse or neglect, the Court is not convinced that there is a basis to do so in this particular case").

ii.   Federal Statutory Immunity

Dr. Demetris relies upon the VCAA in arguing that Congress created "nearly identical immunity provisions" as under Indiana state law for the reporting of child abuse.  [Filing No. 44 at 10-11.][4]  As Plaintiffs point out, however, the VCAA's immunity provision only applies to an individual who is acting "on Federal land or in a federally operated (or contracted) facility."  42 U.S.C. § 13031.  Accordingly, immunity under the VCAA does not apply to Plaintiffs' § 1983 conspiracy claim against Dr. Demetris.

iii.   Common Law Judicial and Witness Immunity

Dr. Demetris also argues that she is entitled to judicial immunity for any actions she took after AV and MV were in the custody of DCS and any actions related to her report regarding possible abuse or neglect of AV, and also that she is entitled to witness immunity for her testimony during the administrative process.  [Filing No. 53 at 5-8.]

Judicial immunity was first recognized at common law "as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error" and to "protect[] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."  *Richman v. Sheahan*, 270 F.3d 430, 434-35 (7th Cir. 2001) (quoting *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). The principle was extended to "non-judicial officials whose official duties have an integral relationship with the judicial process" for "quasi-judicial conduct."  *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986).  The rationale for extending judicial immunity to non-judicial

---

[4] Dr. Demetris also references CAPTA in her discussion, but CAPTA does not itself contain an immunity provision – it merely provides for funding for the creation of state programs aimed at preventing child abuse and neglect.  *See, e.g.*, 42 U.S.C. § 5106a.  The Court discerns that Dr. Demetris relies upon CAPTA solely to support her argument that extending state statutory immunity to federal claims would further CAPTA's purposes.

officials is that those individuals should "be free of 'the harassment and intimidation associated with litigation.'" *Richman*, 270 F.3d at 435 (citation omitted).  Similarly, courts recognize common law witness immunity, which protects a witness from civil liability arising from their testimony.  *Briscoe v. LaHue*, 663 F.2d 713, 718 (7th Cir. 1981).  These common law immunities are recognized in the § 1983 context.  *See, e.g.*, *id.*; *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) (principle of judicial immunity "is applicable in suits under section 1983 because the 'legislative record [gave] no clear indication that Congress meant to abolish wholesale all common-law immunities") (citing *Dellenbach v. Letsinger*, 889 F.2d 755, 758 (7th Cir. 1989)).

The Court finds that Dr. Demetris is entitled to absolute immunity for her actions related to the report regarding AV, her participation in the administrative process, and her participation in the judicial process.  First, one of the main bases for Dr. Demetris' liability – as alleged by Plaintiffs – is her report alleging mistreatment of AV and MV by Stacey, which she allegedly prepared without reviewing medical records from AV's treating physician, interviewing Stacey or Derek, or interviewing anyone who had observed AV outside of a clinical setting.  [*See, e.g.*, Filing No. 37 at 4 ("On or about June 12, 2013, DCS received a report from Dr. Demetris alleging the mistreatment of children AV and MV by their mother Stacey"); Filing No. 37 at 11 ("Before getting [two of the DCS Defendants] involved in the investigation, Dr. Demetris did not review the medical records from AV's treating physicians, interview Stacey or Derek, or speak with anyone who had the opportunity to observe AV outside of a clinical setting").]  The Court first finds that Dr. Demetris is immune from liability for her actions related to the report, which later was one of the subjects of the administrative and judicial processes.  *See Millspaugh v. County Dept. of Public Welfare of Wabash County*, 937 F.2d 1172, 1176 (7th Cir. 1991) (social worker who plaintiffs alleged did not furnish material to court that was favorable to parental custody, and pursued the

- 18 -

litigation for an improper motive, among other things, was entitled to judicial immunity.  Court stated that "[m]ost of what [the social worker] did could yield no harm to the mothers unless the court agreed.  Her motives in asking the court to do certain things, and her selection of evidence to present, lie at the core of the subjects to which absolute immunity applies….We may assume that [the social worker] acted out of improper motives and misled the court.  Still, immunity that applies only when the defendant did no wrong is no immunity at all"); *Boyko v. Parkview Hosp. Inc.*, 2012 WL 3527373, *6-7 (N.D. Ind. 2012) (psychiatrist accused of submitting a report containing false information to state court which led to plaintiffs' children being removed from home was immune from liability under § 1983; court stated "plaintiffs allege that Whiteley submitted a report containing false information to the state court in order to effectuate the removal of plaintiffs' children from their home….Absolute immunity clearly protects Whiteley from a lawsuit based on this alleged act, as the alleged conduct is 'intimately associated with the judicial process'…and involves his 'testimony and other steps taken to present the case for decision by the court.'…Whitely is protected by absolute immunity for this alleged action, despite the fact that he is alleged to have misled the court and/or possessed improper motives").  Additionally, Dr. Demetris' covert video surveillance of AV was part of her evaluation culminating in the report, and she is immune from liability relating to that action as well.

Second, Dr. Demetris is immune from liability related to actions she took after AV was in DCS custody, as those actions were part of the administrative and judicial proceedings.  As a witness in both of those proceedings, Dr. Demetris was entitled to "put [her] best foot forward at hearings and present the judge with [her] unvarnished views of the facts, unencumbered by a fear of future liability for [her] testimony."  *Mohil*, 842 F.Supp.2d at 1079.  Accordingly, such testimony "is protected by immunity – immunity that is absolute and not qualified."  *Id.*; *see also*

*Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009) ("[C]ourt-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction….They are arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do.  Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations 'without the worry of intimidation and harassment from dissatisfied parents'").

Dr. Demetris does not specifically address judicial or witness immunity for liability stemming from her participating in the June 17, 2013 "care conference," which Plaintiffs allege took place before AV and MV were in DCS custody.  To the extent such participation is not properly considered part of the administrative process, the Court considers it below in connection with the adequacy of Plaintiffs' allegations.

In sum, the absolute privileges of judicial and witness immunity protect Dr. Demetris from liability stemming from her report regarding AV, her participation in the administrative process (including her testimony in front of the ALJs), and her participation in the state court proceedings.

### 3.  Adequacy of Section 1983 Conspiracy Allegations

As discussed above, the only action taken by Dr. Demetris that Plaintiffs allege form the basis for their § 1983 conspiracy claim, and for which Dr. Demetris may not be immune, is her participation in the June 17, 2013 "care conference."  The Court will consider whether that allegation can form the basis of a § 1983 conspiracy claim against Dr. Demetris.

The first step in analyzing a 42 U.S.C. § 1983 conspiracy claim is to identify the specific constitutional injury.  *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995).  Conspiracy is not an independent basis of liability, *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); instead, to

sustain a cause of action for conspiracy under § 1983, Plaintiffs "must show that a conspiracy existed and that it deprived them of rights protected by federal law," *Vasquez*, 60 F.3d at 330. Here, Plaintiffs allege that Defendants conspired to violate their Fourth Amendment right to free-dom from unreasonable searches and seizures, and their Fourteenth Amendment right to substan-tive and procedural due process.  [*See* Filing No. 37 at 13.]

To establish § 1983 liability through a conspiracy theory, Plaintiffs must also demonstrate that there was an understanding involving a state actor to deprive them of their constitutional rights and that those individuals were "willful participants in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (quotation and citation omitted).  Although a conspiracy may be established by circumstantial evidence, the Seventh Circuit Court of Appeals has "stressed that such evidence cannot be speculative."  *Id.*; *see also Cooney*, 583 F.3d at 971 ("Even before the Supreme Court's new pleading rule, as we noted, conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough.  The complaint in this case, though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants.  It is not enough (and would not have been even before *Bell Atlantic* and *Iqbal*) that the complaint charges that [certain defendants, with the aid of other defendants] continued the ongoing violations of Plaintiff['s] Con-stitutional rights. That is too vague") (quotations omitted).

Plaintiffs allege that Dr. Demetris completed her report without reviewing AV's medical records from her treating physician, interviewing Stacey or Derek, or speaking with anyone who had observed AV outside of a clinical setting, and ultimately reaching the wrong conclusion in her report.  But, as discussed above, Dr. Demetris is immune from her actions in creating the report.

- 21 -

In any event, those allegations do not support a § 1983 conspiracy claim, as Plaintiffs cite no legal authority for the proposition that Dr. Demetris was obligated to take those investigatory steps before completing her report.  Indeed, requiring those steps to be taken would appear to frustrate the process of having medical professionals evaluate children to see if they are in imminent danger. *See Millspaugh*, 937 F.2d at 1176-77 ("Social workers often act on limited information; those who tarry, or resolve all doubts in favor of the parents, chance enduring damage to the children….Immunity helps social workers put their private interests aside and concentrate on the welfare of children").  Further, Plaintiffs' own allegations indicate that Dr. Demetris authored her report regarding AV before she had had any interactions with DCS officials regarding the VanWinkles.  Authoring the report cannot form the basis of a § 1983 conspiracy claim when those she is accused of conspiring with were not yet even in the picture.  Similarly, this holds true for Dr. Demetris' covert video surveillance of AV, which also took place before Dr. Demetris had discussed AV's case with DCS officials.

This leaves Plaintiffs' allegations regarding Dr. Demetris' participation in the June 17, 2013 "care conference," but simply alleging that that participation occurred is not enough to allege a § 1983 conspiracy claim.  *See Brokaw v. Mercer County*, 235 F.3d 1000, 1014 (7th Cir. 2000) (finding plaintiff did not adequately allege § 1983 conspiracy claim against probation officer, and stating "[b]ut all C.A. adds on appeal to Hansen is that she was present during a conference in which C.A. was questioned by Judge Gende and several of the other defendants.  Hansen's mere presence at this conference is insufficient to create a reasonable inference that Hansen had a meeting of the minds with the other defendants to remove him from his parents based on false claims of child neglect").

Additionally, Plaintiffs do not allege how Dr. Demetris' participation in the June 17, 2013 "care conference" deprived Plaintiffs of constitutional rights, and at least one court has held that removal of a child from his or her parents' home due to suspected child abuse or neglect is not a seizure that violates a constitutional right. *Mohil v. Glick*, 842 F.Supp.2d 1072, 1078-79 (N.D. Ill. 2012) ("According to [plaintiffs], Dr. Glick's report caused Child Services to seek custody of [the children] and caused the court to rule in the state's favor.  In those terms she assertedly set into motion the events that resulted in [the childrens'] forced separation from their parents, a constitutional violation.  That position is seriously flawed, with its principal substantive defect being its premise that the seizure of [the children] violated the Constitution.  It didn't.  Indeed,... 'some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse' suffices to justify the seizure of children under both the Fourth Amendment and the fundamental right analysis....").

The Court is aware that in granting Plaintiffs' motion for leave to amend their original complaint, the Magistrate Judge found that "Plaintiffs do allege enough facts to withstand a motion to dismiss."  [Filing No. 36 at 4.]  This finding was made, however, in a different context – allowing amendment – and the Magistrate Judge noted that the finding was made "in the spirit of Rule 15 to allow parties to freely amend at this stage of the litigation."  [Filing No. 36 at 4.]  The finding was also made before the parties had fully addressed the issue of immunity.  Additionally, the Court is obligated to undertake its own analysis and, considering the acts for which Dr. Demetris may not be immune, finds that Plaintiffs' allegations, which amount to no more than alleging that Dr. Demetris participated in the process that led to AV's and MV's removal from the VanWinkle home, do not adequately allege a claim for § 1983 conspiracy against Dr. Demetris.

**IV.**

**CONCLUSION**

Dr. Demetris is shielded from liability for most of the actions Plaintiffs allege form the basis of their § 1983 conspiracy claim based on the absolute privileges of judicial immunity and witness immunity.  Additionally, the remaining actions Plaintiffs allege Dr. Demetris undertook do not form a sufficient basis for a viable § 1983 conspiracy claim.  Accordingly, the Court **GRANTS** Dr. Demetris' Motion to Dismiss, [Filing No. 43], and the Clerk is directed to **TERMINATE** Dr. Demetris from the lawsuit.  No partial judgment shall issue at this time.  As discussed above, the Court also **GRANTS** Dr. Demetris' Motion to Strike.  [Filing No. 54.]

The Court requests that the Magistrate Judge confer with the remaining parties to establish a schedule for bringing Plaintiffs' remaining claims to conclusion.

Date: December 18, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

- 24 -